**Gary Edward WELLS, Petitioner/Appellant,**

v.

**TENNESSEE BOARD OF PAROLES, Charles Traughber, Chairman, and Gayle S. Barbee, Director of Parole Board Operations, Respondents/Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 21, 1995.

Permission to Appeal Denied by Supreme Court Oct. 23, 1995.

---

Gary Edward Wells, Nashville, pro se.

Charles W. Burson, Attorney General & Reporter, Eugene J. Honea, Assistant Attorney General, Nashville, for respondents.

## OPINION

CANTRELL, Judge.

Gary Edward Wells, an inmate in the Tennessee correctional system, appeals an order of the Circuit Court of Davidson County. The Tennessee Board of Paroles had denied parole to Mr. Wells, and he petitioned the Court for a common law Writ of Certiorari to compel the Board to grant him another hearing. The Circuit Court dismissed his petition. We affirm.

### I.

Under the Common Law Writ of Certiorari, the actions of an inferior tribunal are examined to determine whether that body has exceeded its jurisdiction, or acted illegally, fraudulently or arbitrarily. See *Powell v. Parole Eligibility Review Board,* 879 S.W.2d 871 (Tenn.App.1994). *Yokley v. State,* 632 S.W.2d 123 (Tenn.App.1981). Mr. Wells' petition alleged that the conduct of the Board of Paroles, and of the hearing officer before whom he appeared, departed so far from the proper performance of their duties that it merited a finding that he was entitled to another hearing.

The trial court dismissed the appellant's petition upon a motion by the Department of Paroles under Rule 12.02(6), Tenn. R.Civ.P.: dismissal for failure to state a claim upon which relief can be granted. For the purposes of a Rule 12.02(6) motion, a movant admits the truth of all relevant and material averments contained in the petition or complaint, but asserts that such facts do not constitute a cause of action. *Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn.1975).

Our review of the trial court's decision must necessarily take the factual allegations contained in the plaintiff's petition as true, but we are not required to consider as true the factual inferences the plaintiff draws from those allegations, or to consider as accurate his legal conclusions. See *Dobbs v. Guenther,* 846 S.W.2d 270 (Tenn.App.1992). *Elliott v. Dollar General Corp.,* 225 Tenn. 658, 664, 475 S.W.2d 651, 653 (1971).

### II.

Mr. Wells asserts that he became eligible for parole in November of 1993, but that he was not granted a hearing until April 26, 1994. He claims that he was the last inmate to be interviewed on that day, and that as a result the hearing officer was distracted and rushed, and only gave him eight minutes in which to convince her that he was a suitable candidate for parole. Mr. Wells contends that eight minutes is not enough time for a

fair or meaningful decision to be made on an issue of such importance as his freedom.

After this very brief hearing, the interviewing officer told Mr. Wells that he would be denied parole for at least a year. A printed form bearing the title NOTICE OF BOARD ACTION PAROLE RELEASE HEARING was subsequently sent to him. The form contained hand-written entries in designated spaces to indicate the Board's decision. Mr. Wells was able to decipher the entry at the bottom of the form as indicating that he would not be considered for parole for at least two years because of his "# of cases." In his brief, Mr. Wells states that he was convicted on guilty pleas on ten counts in a single case, and received a single sentence.

A copy of the notice is included in the record. It states that the hearing time was 30 minutes. Of the two spaces on the form for the Board to indicate its "Reasons for Decline" one has the initials "HR" for High Risk, the other appears to have the initials "OY" which do not correspond to any of the reasons for decline listed on the form.

We note that we are not the only ones who seem to have difficulty interpreting the entries on the form. The Attorney General's brief states that one reason the Board declined parole for Mr. Wells was because he needs to participate in a drug program, and he refers to the notice as the source of that information. However we see nothing in our copy of the form to support such a statement.

The appellant claims that he could not be considered a High Risk candidate for parole in light of the fact that the State of Florida, has placed a felony detainer on him, and that because of that detainer he did not pose any risk at all to the citizens of Tennessee.

Mr. Wells argues in his brief that the above irregularities indicate that he was deprived of his rights to due process. The response of the Board of Paroles is that release on parole is a privilege and not a right; that under Tennessee law, an inmate does not have a protected liberty interest in a particular parole date; and that as a result, there is also no right to due process in a parole hearing.

### III.

The United States Supreme Court has held that when a state establishes a system of parole, it does not thereby create for its prisoners a constitutionally protected liberty interest in being released prior to the expiration of a legally imposed sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). However, a state may enact statutes and rules for the administration of its prisons that create liberty interests entitled to constitutional due process protections. *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

In the case of *Mayes v. Trammell*, 751 F.2d 175 (6th Cir.1984), the federal appeals court held that the Tennessee parole scheme, and particularly Rule 1100–1–1–.06 of the Rules of the Tennessee Board of Parole, had created just such a liberty entitlement. At the time, the relevant portion of that rule read:

> The Board operates under the presumption that each resident who is eligible for parole is a worthy candidate and thus the Board presumes that he will be released on parole when he is first eligible....

Apparently it was not the intention of the Board of Paroles to create such a constitutionally protected interest, for in the year following the decision in *Mayes v. Trammell*, the Board amended Rule 1100–1–1–.06, omitting all mention of presumptions of worthiness or of release. In the subsequent case of *Wright v. Trammell*, 810 F.2d 589 (6th Cir. 1987) the same court held that the change in the rules had eliminated the liberty interest recognized in *Mayes v. Trammell*.

The appellant argues in general terms that changes in the parole statutes enacted as part of the Criminal Sentencing Reform Act of 1989 resurrected the liberty interest that had been eliminated in 1985. However, after examining the version of the parole statutes found in the Criminal Sentencing Reform Act of 1989, side-by-side with the previous law, the Criminal Sentencing Reform Act of 1982, we do not find any support for the appellant's position.

We would be reluctant, however, to give our blanket approval to the Board's contention that since Tennessee does not provide a constitutionally protected liberty interest in parole, inmates who are eligible for parole do not have any due process rights. We believe rather, that the Board of Paroles is obligated to follow the laws of the State of Tennessee as well as its own rules, and that inmates are entitled to whatever due process arises as a result of the proper application of the state statutes and the rules.

### IV.

The following are some of the rights that arise from the operation of the rules of the Board of Paroles: A prisoner who is eligible for parole is entitled to a hearing, at which he may appear on his own behalf, Rule 1100–1–1–.07(2)(a). The rule does not state how long the hearing must be, but we take it as a given that it must be long enough to be meaningful. A prisoner has a right to be notified of the Board's decision as soon as it is made, Rule 1100–1–1–.07(3)(b). If parole is denied, he has a right to receive reasons for the denial, furnished in written form. Rule 1100–1–1–.07(3)(e).

■ The hearing that Mr. Wells received was rather cursory, and we agree with him that a hearing that is too brief cannot be meaningful. However, we cannot say that as a matter of law a hearing of eight minutes cannot be a meaningful one.

Mr. Wells received notice of the Board's decision, and though the notice may have had an incorrect entry for the duration of the hearing time, and an undecipherable notation, it contained one valid reason for denial—that the Board considered him to be "High Risk."

■ The appellant contends that the Florida detainer warrant issued against him makes a finding of high risk absurd on its face, but we are not convinced that a pending criminal action against an inmate should create any kind of presumption in favor of paroling that inmate. It is true that the Rule 1100–1–1–.09, which deals with parole and detainers, states in part that:

The presence of a detainer shall not in and of itself constitute a valid reason for the denial of parole. It is recognized that where the resident appears to be a good parole risk, there may be distinct advantages to the granting of parole despite the presence of a detainer.

It may be that the parole board's right to grant "parole to detainer only" (Rule 1100–1–1–.09(c)(i)) provides one way to control risk, but we do not believe there is anything inherently inconsistent between a finding of high risk and the presence of a detainer.

■ As for the Board's decision to defer further consideration of parole for Mr. Wells for two years because of "# of cases", we do not see in its published rules any guidelines for deferral of parole consideration after denial. We note, however, that one of the factors listed under Rule 1100–1–1–.06 BOARD CRITERIA FOR GRANTING OR DENYING PAROLE, is "The resident's past criminal record, including the nature and circumstances, recency and frequency of previous offenses." We therefore must reject the appellant's contention that because the number of counts he pled guilty to was factored into the sentence he received, it cannot be considered in parole decisions.

### V.

Although we are dealing with a case in which the trial court granted a Rule 12.02(6) motion to dismiss and would ordinarily confine our review to the petition, we have examined the record before us as if all the facts found therein had been pled. Even under that degree of scrutiny, we cannot conclude that the court exceeded its jurisdiction, or acted illegally, arbitrarily or fraudulently in the way it decided not to grant the petitioner parole. We affirm the decision of the trial court. Remand this cause for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

TODD, P.J., and LEWIS, J., concur.