# MINNIE LORRAINE HOWARD v. GEORGE W. AMMONS and RUBY K. AMMONS.

# JAMES E. HOWARD v. GEORGE W. AMMONS and RUBY K. AMMONS.—402 S.W.(2d) 875.

Eastern Section. November 23, 1965.

Certiorari Denied by Supreme Court April 18, 1966.

Crawford & Crawford, Maryville, for appellants.

Rom Meares, Sr., and Rom Meares, Jr., Maryville, for appellees.

PARROTT, J.   The plaintiffs have appealed from the action of the Circuit Judge in directing a verdict in favor of the defendants at the close of plaintiffs' proof.

Mrs. Minnie Lorraine Howard and her husband brought these suits for personal injuries, medical expense and loss of services resulting from a fall of Mrs. Howard on the walkway of the home of the defendants, Mr. and Mrs. George W. Ammons. Mrs. Ammons is a sister to Mr. Howard.

On December 17, 1962, about 9:30 a.m. Mrs. Howard received a telephone call from Mrs. Ammons informing her she had fallen and hurt her head and asked plaintiff to take her to the hospital. In response to this call, plaintiff fell on the front walk of defendants' home and brought this suit seeking damages for injuries resulting from the fall.

We gather from the trial judge's remarks in directing this verdict he had some question in his mind as to the plaintiff's status—invitee or social guest. It is true plaintiff is a member of the family and on numerous occasions had been a social guest in defendants' home. We hold under the facts and circumstances of this visit, plaintiff is an invitee. She came to the premises at the request of the owner and for the sole purpose of taking defendant to the hospital which must be considered beneficial to the defendant. Being an invitee the owner owed a duty to keep the premises in a reasonably safe condition. Kendall Oil Co. v. Payne, 41 Tenn.App. 201, 293 S.W.(2d) 40.

Immediately after receiving the call, Mrs. Howard called her husband and advised him of the fall.

She then left her home and proceeded to the defendants' house by car. Upon arrival, she parked in the driveway at a concrete walk leading from the drive to the front door. As she proceeded onto the concrete walkway, she fell. The walkway was painted a bluishgray color and was covered with a thin sheet of ice. Mrs. Howard testified she did not observe the ice until after she had fallen. She did not expect ice to be on the walkway, had seen no ice anywhere on this morning and was taking no extra precautions but if she had looked closely, she could have seen the ice.

The proof shows the weather was cold and crisp. Mr. Howard, a school bus operator, observed no ice anywhere on his morning bus run or at the Ammons home. He entered by the front door but did not use the walkway upon which plaintiff fell.

There is no direct evidence the defendant, Mrs. Ammons, knew of the icy condition of the walkway. Neither is it shown where she had fallen. It is shown Mr. Howard arrived at the defendants' house prior to his wife and he and Mrs. Ammons heard Mrs. Howard's car drive up and Mrs. Ammons exclaimed, ''Oh, she'll fall too.''

From this exclamation it is our belief that reasonable minds could draw different conclusions, one being Mrs. Ammons had fallen on the same ice and, therefore, knew of the existing condition. If this conclusion should be reached by the jury, it would be for them to determine as to whether the owner had knowledge of a dangerous condition on the premises and failed to warn plaintiff. Management Services, Inc. v. Hellman, 40 Tenn.App. 127, 289 S.W.(2d) 711. Likewise the question of the plaintiff's contributory negligence would be a question for the jury. McBroom v. S. E. Greyhound Lines, 29 Tenn.App. 13, 193

S.W.(2d) 92. Also it would be a question for the jury to determine whether the icy condition on the premises was obvious and if there was a need to warn plaintiff. Gargaro v. Kroger Grocery & Baking Co., 22 Tenn.App. 70, 118 S.W.(2d) 561.

Another question for the jury would be if the icy condition of the walkway existed a sufficient length of time for the defendant to be charged with constructive notice. It is shown by the testimony of Mr. Howard there was no ice elsewhere and from such testimony the jury might infer the ice on the walkway had been there for some time or that due to some peculiar circumstance, known or should have been known by the defendant, the ice collected on the walkway. The jury, in determining if one be chargeable with constructive notice must consider a number of factors, such as the nature of the existing danger, its source and cause, the size, location and foreseeable consequences as well as the length of time such danger existed. Allison v. Blount National Bank, 54 Tenn.App. 359, 390 S.W.(2d) 716 (cases cited therein).

It is our opinion the case should have gone to the jury for determination of the above factual issues.

As we see the present case, it would not be controlled by City of Nashville v. Nevin, 12 Tenn.App. 336, relied on by the trial judge where this court said a municipality is not liable for failure to remove snow and ice so long as they exist in their natural state. The cases are distinguishable on the facts.

The trial court also relied upon the Ohio case of Wise v. Great Atlantic & Pacific Tea Co., 94 Ohio App. 320. 115 N.E. (2d) 33, in which it was held there would be no liability upon a proprietor for failure to remove a natural ac-

cumulation of ice and snow in a parking lot. The Ohio case is contra to our case of Grizzell v. Foxx, 48 Tenn. App. 462, 348 S.W.(2d) 815, in which it was held a landlord was negligent in failing to remove from a common walkway a four-day natural accumulation of snow and ice.

The prime issue in this case does not appear to be based on negligence for the failure to remove a natural accumulation of ice or snow but is similar to those cases where an owner or occupant of property has failed to warn an invitee of a known latent defect. The accumulation of ice was not one which was widespread over a large vicinity and known or should have been known to all. It appears to have been peculiarly limited to one spot on defendants' walkway.

For the reasons herein stated, the action of the Trial Judge in directing a verdict for the defendants is reversed and the case is remanded for trial with the costs in this court taxed to the defendants in error.

McAmis, P. J., and Cooper, J., concur.